# Exhibit 1

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2014-13612-CA-24

FL. BAR NO. 47782

JOSEPH PEREA,
an individual
Plaintiff,

v.

AVMED, INC., d/b/a AvMed, a Florida Non-Profit
Corporation
Defendant.
_____/

## SUMMONS

TO:
Avmed, Inc., c/o Steven M. Ziegler, Registered Agent
4300 NW 89th Blvd,
Gainesville, FL 32606

**A lawsuit has been filed against you.**

You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time, you must file your written response to the Court, located at:

Dade County Courthouse, Clerk of Courts
73 West Flagler Street, Miami, Florida 33130.

You must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

JOSEPH PEREA, ESQ., JOSEPH PEREA, P.A.
P.O. BOX 961383
MIAMI, FL 33296

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above named Defendant.

DATED ON ___JUN 0 4 2014___, 2014.

HARVEY RUVIN
CLERK OF THE CIRCUIT COURT

BY: _____
Deputy Clerk

(Seal)

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l-assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et dud nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vox biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

---

Plaintiff/Plaintiff's Attorney:

JOSEPH PEREA, P.A.
Joseph Perea
P.O. Box 961383,
Miami, FL 33296

Filing # 14065562 Electronically Filed 05/26/2014 06:10:57 PM

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRUCIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2014-13612-CA-24
FL. BAR NO. 47782

JOSEPH PEREA,
an individual

      Plaintiff,

          v.

AVMED, INC., d/b/a AvMed,
a Florida Non-Profit
Corporation

      Defendant.

## COMPLAINT FOR DAMAGES

Plaintiff Joseph Perea ("Perea" or "Plaintiff") brings this complaint against AvMed, Inc., ("AvMed" or "Defendant"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences and as to all other matters, upon information and belief and states as follows:

## NATURE OF THE ACTION

1.    This complaint is brought on behalf of Plaintiff against AvMed for its failure to adequately protect the confidential personal and medical information of Perea, a former customer of AvMed's, conduct that ultimately resulted in one of the largest medical data breaches in history.

2.    On or about December 10, 2009, two unencrypted laptop computers were stolen from AvMed's Gainesville, Florida corporate office (the "data breach"). The

1

laptops contained private, personal information including, but not limited to, protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), Social Security numbers ("SSNs"), medical information and other information (collectively, "Sensitive Information") of approximately 1.2 million AvMed enrollees.

3.      As a result of AvMed's failure to implement and follow basic security procedures, Plaintiff's Sensitive Information is now in the hands of thieves. Plaintiff now faces a substantial, increased risk of identity theft; in fact, Perea has already experienced repeated instances of identity theft since the data breach. Perea has had to spend and will continue to spend, significant time and money in the future to protect himself.

4.      As a result of AvMed's failure to follow contractually-agreed upon, federally-prescribed, industry standard security procedures, Plaintiff received only a diminished value of the services he paid AvMed to provide. Plaintiff contracted for an insurance plan that included a guarantee by AvMed to safeguard his personal information, and instead, received a plan devoid of these very important protections. Accordingly, Plaintiff alleges claims for negligence, breach of contract, breach of implied contract and unjust enrichment.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action because this is an action for damages that exceeds $15,000.00 exclusive of interest, costs, and attorneys' fees.

6.      Venue is proper because Perea is a resident of Miami-Dade County, Florida and AvMed's principal place of business is 9400 Dadeland Blvd, Miami, Florida 33156, in Miami-Dade County, Florida. AvMed is also a Florida corporation.

2

In addition a substantial part of the events giving rise to the Plaintiff's claims occurred in Miami-Dade County.

**PARTIES**

7.        Plaintiff Perea is a current resident of Florida. As an AvMed member, Perea provided Sensitive Information to Defendant. Perea's Sensitive Information was contained on an unprotected and unencrypted laptop computer that was stolen in the data breach. As a result of the data breach, Perea's identity was stolen.

8.        Defendant AvMed is a Florida corporation headquartered in Miami, Florida. AvMed is an integrated managed care organization that delivers managed health care services through health plans and government sponsored managed care plans to more than 1.2 million individuals throughout the State of Florida and the United States.

**FACTUAL BACKGROUND**
**Security Breaches Lead to Identity Theft**

9.    The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use identifying data such as SSNs to open financial accounts, receive government benefits and incur charges and credit in a person's name[1]. As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records...[and their] good name." According to the Federal Trade Commission ("FTC"), identity theft victims must spend countless hours and large amounts of money repairing the

---

[1] *See* http:///www.gao.gov/new.items/d07737.pdf.

impact to their good name and credit record.[2]   Identity thieves use stolen personal information such as SSNs for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.* See www.gao.gov/new.items/d07737.pdf.

10.     With access to an individual's Sensitive Information, criminals are capable of conducting many nefarious actions besides emptying the victim's bank account. Identity thieves also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. Further, loss of private and personal health information can expose the victim to loss of reputation, loss of job employment, black mail and other negative effects.

---

[2] *See* FTC Identity Theft Website: www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html.

11.    A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

12.    Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, SSNs, and other Sensitive Information directly on various Internet websites making the information publicly available. In one study, researchers found hundreds of websites displaying stolen Sensitive Information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism—the "Safe Browsing list." The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."

13.    Companies recognize Sensitive Information as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html. *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of*

5

*Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *34 (2009).

14.   A similar recent report about health-care related identity theft fraud sponsored by Experian indicated that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000." Moreover, a majority of the victims were forced to pay out-of-pocket costs for health care they did not receive in order to restore coverage. Almost 50 percent of the victims lost their health care coverage as a result of the incident, while nearly one-third said their insurance premiums went up after the event. Forty (40) percent of the consumers were never able to resolve their identity theft at all. Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

15.   Identity thieves may threaten national security or commit acts of terrorism. According to the 911 Commission Report, the September 11 hijackers used fake ID's to board their planes,   *See* http://www.pueblo.gsa.gov/cic_text/money/preventidtheft/preventing.pdf *see also* www.msnbc.msn.com/id/5594385 (stating that the September 11 hijackers "liberally used document fraud prior to that date, some to ease entrance into the United States, others to move around once they were here and to obtain drivers' licenses they needed to board the airplanes.").

16.   The FTC recently indicated that South Florida has the highest rate of identity theft complaints   in   the   entire   United   States.   See   http://blogs.sun-sentinel.com/consumerblog/2011/04/05/florida-ranks-number-2-for-fraud-id-theft-by-ftc-south-florida-worst-place-in-state.

6

**AvMed's Privacy Policy and Agreements to Keep Sensitive Information Confidential**

17.     AvMed represented to Plaintiff that it would protect his Sensitive Information.

18.     Through its website, AvMed stated and/or states the following confidentiality and privacy policy:

**Your Privacy**

We follow the Health Insurance Portability and Accountability Act (HIPAA) Privacy Regulations to safeguard your protected health information (PHI). *We do not disclose information about you or any former members to anyone, except as permitted by HIPAA.* All AvMed employees sign a confidentiality statement and are trained in the proper handling of personal information. Each time you call Member Services, you will be asked to verify your AvMed member ID number, address, phone number and date of birth. If you're calling for another AvMed member, you need to identify yourself, relationship to the member you're calling about, and verify the member's ID number, address, phone number and date of birth.

19.     On its website, Defendant also enumerates the rights and responsibilities required of AvMed and its members:

**Members' Rights and Responsibilities**

*Members have a right to:*

*                    *                    *

The confidentiality of information about their medical health condition being maintained by the Plan and the right to approve or refuse the release of member specific information including medical records, by AvMed, except when the release is required by law.

*                    *                    *

*Members have the responsibility to:*
*                    *                    *

Provide accurate and complete information about their health.

7

*         *         *

Fulfill financial obligations for receiving care, as required by their health plan agreement, in a timely manner.

20.     Additionally, in recognizing the confidential and sensitive nature of the information it collects from members, AvMed adopted, and advertises on its website, a confidentiality policy with respect to Sensitive Information:

<u>Confidentiality</u>

AvMed and its employees are in possession of and have access to a wealth of confidential, sensitive and proprietary information. The inappropriate release of such information could be detrimental to AvMed, as well as its members, clients, providers, and/or vendors. Every AvMed employee has an obligation to actively protect and safeguard confidential, sensitive and proprietary information in a manner designed to prevent its unauthorized disclosure.

1)      AvMed employees have an obligation to maintain the confidentiality of member information in accordance with all applicable laws and regulations, including, but not limited to, the HIPAA Privacy and Security standards. Employees are reminded that information requiring protection exists in many formats, such as paper, electronic, audio, and video. All copies, formats and versions of member information must be maintained in accordance with applicable laws and AvMed policies and procedures. AvMed assigns employee access to confidential information through a role based security approach to ensure that only those staff whose jobs require it and who have a legitimate need-to-know, have the ability to access confidential member data. Employees must not share passwords or other system access rights with any other employee or person(s). Employees are instructed to always make sure that any access or use of confidential data is carried out using only the minimum amount necessary. Additionally, employees shall refrain from revealing any personal or confidential information unless supported by legitimate business or member care purposes. If the disclosure of information is so supported, employees shall use or disclose on a need-to-know basis, only the minimum amount necessary to accomplish the task. If questions arise regarding an obligation to maintain the confidentiality of information or the appropriate release of information, employees should seek assistance from a

8

supervisor, the Compliance department or other appropriate staff within the AvMed Legal Department.

2) Information, ideas and intellectual property assets of AvMed are important to its success. Information pertaining to competitive position, business strategy, payment and reimbursement information, and information relating to negotiations with third parties or other employees should be protected and shared only with those individuals having a need to know such information in order to perform their job responsibilities.

3) Salary, benefit and other personal information relating to employees shall be treated as confidential. Personnel files, payroll information, disciplinary matters and similar information shall be maintained in a manner designed to ensure confidentiality in accordance with applicable laws.

4) Employees will exercise due care to prevent the unauthorized release or sharing of information. To ensure that employees fully understand the importance of upholding this particular standard of conduct, they are required to sign a Statement of Confidentiality at the time of hire and on an annual basis thereafter.

21.   AvMed requires its members to enter into a Service Contract to disclose Sensitive Information, which compels members to "provide accurate and complete information about their health." In exchange, AvMed promises that:

**Your medical and claims records are confidential**

We will keep your medical and claims records confidential. Please note that we may disclose your medical and claims information (including your prescription drug utilization) to any of your treating physicians or dispensing pharmacies.

22.   These representations and requirements are collectively provided on AvMed's webpage that lists member responsibilities and member rights under their plans. AvMed created these representations and requirements and publicly advertised them on its

9

website as a means of increasing the value of its insurance policies, thus allowing it to charge consumers   higher premiums. This agreement is the same for all AvMed members, including Plaintiff.

### The Data Breach at AvMed

23.     On or about December 10, 2009, two laptop computers that were owned, operated, and controlled by AvMed were stolen from AvMed's corporate office in Gainesville, Florida. The two laptop computers contained the Sensitive Information of AvMed members, including Plaintiff.   The stolen data encompassed Sensitive Information dating back to April 2003.

24.     On or about December 23, 2009, AvMed officials determined that at least one of the stolen laptop computers was not encrypted to protect access to, and widespread dissemination of, AvMed's members' Sensitive Information.

25.  Upon information and belief, the thief sold the unencrypted, unprotected AvMed laptop computer to an individual who has a history of dealing in stolen property.

26.     In addition to failing to secure its members' Sensitive Information, AvMed failed to adequately investigate the breach to determine how many of its members' Sensitive Information had been exposed, or in the alternative, willfully failed to disclose the scope and expanse of the breach.

27.     On or about February 3, 2010, AvMed, for the first time, publicly revealed the security breach and notified the 360,000 potentially affected members. Plaintiff Perea was not a member of AvMed at that time and was not notified.

28.     AvMed then hired a forensics team from PriceWaterhouseCoopers ("PWC") to provide an independent analysis of the number of potentially affected members. Significantly, PWC was not hired by AvMed until *after* its February 3, 2010 public disclosure of the data breach.

29.     AvMed took no action to promptly notify its members that were affected by the data breach.

30.     AvMed waited until June 3, 2010—one hundred and seventy-four (174) days after the initial breach was discovered—to finally disclose that an *additional 860,000* current and former members were affected by the data breach and that their unencrypted and unprotected Sensitive Information was contained on a stolen laptop that was sold to, on information and belief, an individual who has a history of dealing in stolen property.  Plaintiff Perea did not receive notification until on or after June 3, 2014.

31.     AvMed's failure to notify its members of this data breach until six months after it occurred meant that those members, including Plaintiff had no reason to check their accounts and credit reports for suspicious activity arising from the breach during that time.

32.     AvMed, knowing that Sensitive Information is subject to the strict privacy and security protections of HIPAA, and other standards and regulations, delayed and otherwise failed to properly and timely provide notice to Plaintiff regarding the stolen Sensitive Information.

33.     AvMed designed and implemented its policies and procedures regarding the security of protected health information and Sensitive Information. These policies and procedures failed to adhere to reasonable and best industry

11

practices in safeguarding protected health information and other Sensitive Information. For instance, AvMed failed to encrypt the stolen laptop computers or otherwise safeguard the Plaintiff's Sensitive Information.

34.     Further, AvMed did not notify Plaintiff whose Sensitive Information was, or was reasonably believed to have been, accessed by an unauthorized person through the data breach in any manner, including but not limited to, written, telephone, electronic or authorized substitute notice until AvMed posted a notice on its website on or about June 3, 2010 and began sending letters in a rolling mailing on or about June 7, 2010.

35.     Upon information and belief, AvMed failed to effectively supervise its workforce (including both employees and independent contractors) on the policies and procedures with respect to the appropriate maintenance, use and disclosure of protected health information and other Sensitive Information.

36.     In a June 7, 2010 update to AvMed's "Frequently Asked Questions" regarding the breach, AvMed admitted that "During the recovery process and internal investigation, **AvMed determined that the data on the laptops was not properly secured.**"(*See***http://www.dms.myflorida.com/content/download/71088/426723/file/AvMed %20FAQs%20Updated%20draft%200060710%20final.pdf**)

37.     Minors were among the AvMed members whose Sensitive Information was exposed on the unencrypted and unprotected laptop.

38.     In sum, AvMed's failure to encrypt and otherwise safeguard their laptop computers resulted in the exposure of the Sensitive Information of approximately 1.2 million current and former AvMed members.

39.    As a former member of AvMed, Plaintiff Perea provided AvMed with his accurate Sensitive Information, as required under their Service Contracts. The stolen laptop computers contained their unencrypted, unprotected Sensitive Information.

40.    Plaintiff's Sensitive Information was thereafter sold to, upon information and belief, an individual who has a history of dealing in stolen property, thus substantially increasing the likelihood that Perea's identity would be stolen.

41.    **Plaintiff Perea's Identity Was Stolen and He Suffers From Monetary Injuries**

42.    Perea has suffered from identity theft as a direct result of AvMed's failure to safeguard and protect his Sensitive Information.

43.    Perea's identity was stolen in or around March 2012. It was used to attempt to file false federal tax returns and to obtain a tax refund of approximately $4,500 for the 2011 tax year.

44.    In October 2013 Perea's business check card with Total Bank was used by identity thieves in Canada who made several unauthorized purchases.

45.    Barry University and Target Stores have notified Perea that his sensitive information was compromised. This too occurred subsequent to the breach committed by AvMed.   As a direct result of AvMed's data breach, Perea is at the mercy of identity thieves who are in possession of his name, address, social security number, date of birth, and private medical information.

46.     As a direct result of AvMed's data breach, Perea did not receive his 2011 tax refund until December 2012, approximately 9 months after he filed his tax return. Each day week, and month Perea did not receive his tax refund was a period of time Perea was damaged by AvMed's breach.  Perea was required to abide by the IRS's stringent requirements to taxpayers who have been the subject of identity theft. Every year now Perea must wait for the IRS to provide him a special pin number and he must use this pin number when filing his tax returns. If he loses the pin number, he will not be allowed to file his tax return until he obtains a new pin number, and this is something that could take a substantial period of time, given the pace at which the IRS handles individual matters.  This is a burden Perea has that most Americans do not have to endure in their dealings with the IRS.

47.     As a direct result of AvMed's data breach, Perea seeks a value for the personal and sensitive information that was lost: His name, address, date of birth, social security number, telephone number, and private personal information.

48.     As a direct result of Av-Med's data breach, thieves are now in possession of Perea's sensitive information.

49.     Perea's personal information is unlike material objects that are stolen and replaced.  A person's name, address, social security number, date of birth and personal medical information can be used by incalculable numbers of people across the earth for the unforeseen future and for nefarious reasons.

50.     Before the Av-Med data breach, Perea had never been the victim of identity theft.  Since the Av-Med data breach, Perea has been victimized on several occasions.

**The Data Breach Caused Perea's Identity Theft and Monetary Injuries**

51.     AvMed's data breach caused Perea's identity theft.

52.     *Prior to the data breach, Perea's identity had never been stolen.*

53.     Furthermore, prior to the data breach, Perea's Sensitive Information had never been compromised in any way.

54.     However, as explained above, Perea has experienced—for the first time in his life—several instances of identity theft, which was caused by AvMed's data breach.

55.     Thus, given that before the data breach, Perea had never previously suffered from identity theft and undertook substantial efforts to protect his identity, Perea has sufficiently shown that the data breach caused his identity theft.

56.     In short, but for AvMed's data breach, Perea's identity would not have been stolen.

57.     **AvMed's Credit Monitoring Offer is Inadequate**

58.     Upon information and belief, AvMed offered the Plaintiff two years of Debix Credit monitoring services.  Av-Med put the burden on its customers and former customers rather than taking responsibility to assist them.

59.     AvMed's mere two-year offer of Debix is a woefully insufficient remedy for Defendant's data breach.  As discussed, victims of data breaches commonly face multiple years of ongoing identity theft.

60.     The Debix monitoring program does not provide any compensation for the release of Plaintiff's Sensitive Information, including medical information.

61.     In addition, AvMed's credit monitoring offer to Plaintiff squarely placed the burden on him, rather than AvMed, to investigate and protect himself

from AvMed's tortious acts resulting in the data breach. Rather than automatically enrolling Plaintiff in Debix's credit monitoring program upon discovery of the breach, AvMed instead sent instructions to affected members recommending that they sign-up for these services. Upon information and belief, this was done in an attempt by AvMed to mitigate the costs associated with its data breach. AvMed knows, or should have known, that many of its members, many of whom are infirm, are not technically-savvy and would not fully grasp the magnitude and significance of its data breach, and thus would fail to sign up for Debix's services.

62.     Furthermore, AvMed instructed its enrollees, including Plaintiff to notify the three credit bureaus to discuss placing a fraud alert on their credit reports, regularly review all medical bills and benefits statements, order and check all credit reports—all at their own time and expense.

63.     Likewise, AvMed failed to acquire any identity theft insurance coverage or enrollment in fraud resolution services for Plaintiff.

### AvMed's Wrongful Conduct in Violation of HIPAA and Industry-Standard Practice

64.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Sensitive Information like the data left unguarded by AvMed. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

65.     AvMed's data breach resulted from a combination of insufficiencies that indicate Defendant did not comply with safeguards mandated by HIPAA regulations

and industry standards. First, it can be inferred from AvMed's data breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures prohibiting storing Sensitive Information on portable computers (such as a laptops) and/or information security policies or procedures in place regarding encrypting or protecting Sensitive Information.

66.     In addition, AvMed's data breach could have been prevented if AvMed implemented HIPAA mandated, industry standard policies and procedures for securely disposing of Sensitive Information when it was no longer necessary and/or had honored its obligations to its members.

67.     Contributing to the problem was AvMed's failure to effectively supervise and train its employees that were in charge of designing and implementing policies and procedures on the appropriate maintenance, use, and disclosure of Sensitive Information.

68.     AvMed's security failures also include, but are not limited to, the following:

    a.     Failing to maintain an adequate data security system to prevent data loss;

    b.     Failing to mitigate the risks of a data breach and loss of data;

    c.     Failing to adequately catalog the location of members' digital information;

    d.     Failing to encrypt Sensitive Information of Plaintiff;

    e.     Failing to ensure the confidentiality and integrity of electronic protected health information it created, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

    f.     Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected

17

health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

h.   Failing to implement technical policies and procedures that govern the receipt and removal of hardware and electronic media that contain electronic protected health information into and out of a facility to maintain their security in violation of 45 CFR 164.310(d)(1); Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

i.   Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR

164.308(a)(6)(ii);

j.   Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

k.   Failing to protect against an reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually

18

identifiable health information in violation of 45 CFR
164.306(a)(3);

l.     Failing to ensure compliance with the HIPAA security standard
rules by its workforce in violation of 45 CFR 164.306(a)(94);

m.    Impermissibly and improperly using and disclosing protected
health information that is and remains accessible to
unauthorized persons in violation of 45 CFR 164.502 et seq.;

n.     Failing to effectively train all members of its workforce
(including independent contractors involved in the data breach)
on the policies and procedures with respect to protected health
information as necessary and appropriate for the members of its
workforce to carry out their functions and to maintain security of
protected health information in violation of 45 CFR 164.530(b)
and 45CFR 164.308(a)(5); and

o.     Failing to design, implement, and enforce policies and
procedures establishing physical and administrative
safeguards to reasonably safeguard protected health
information, in compliance with 45 CFR164.530(c).

69.  AvMed also failed to comply with industry standards. In November 2001, the
National Institute of Standards and Technology ("NIST") proposed an "Advanced
Encryption Standard" ("AES") to be used as the technological standard for encrypting
sensitive data. On May 26, 2002, AES was adopted as the standard encryption technique of
the United States government. AES is free for any use private or public, commercial or non-

commercial. NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY, U.S. DEP'T OF COMMERCE, FEDERAL INFORMATION PROCESSING STANDARDS PUBLICATION PUBL'N 197 "Announcing the Advanced Encryption Standard" (2001), http://csre.nist.gov/publications/fips/fips197/fips-197.pdf.

70.     The NIST published a report in March 2005 detailing standards for healthcare providers to comply with HIPAA's Security Rule. In the Report, the NIST recommends specific techniques to safeguard electronically stored Sensitive Information. In one example, the NIST specifically recommends a system, easily implemented and maintained, to automatically encrypt Sensitive Information during non-work hours, and then decrypt it at the beginning of each workday. MATTHEW SCHOLL ET AL., NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY, U.S. DEP'T OF COMMERCE. NIST SPECIAL PUBLICATION 800-66 REVISION 1, AN INTRODUCTORY RESOURCE GUIDE FOR IMPLEMENTING THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA).

71.     In light of the foregoing, AvMed has failed to comply with industry standards. Even more striking is that one of the exact examples recommended by the NIST, encrypting data during non-work hours—a free and commonly used technique—if implemented, would have prevented the data breach and the identity theft of its members.

## COUNT I
### Negligence

72.     Plaintiff repeats and re-alleges all previous allegations as if fully set forth herein. Defendant requested and came into possession of Plaintiff's Sensitive Information, and had a duty to exercise reasonable care in safeguarding and protecting such information

from being accessed. Defendant's duty arose from the industry standards discussed above and its relationship with Plaintiff.

73.     Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's Sensitive Information. The breach of security, unauthorized access, and resulting injury to Plaintiff was reasonably foreseeable, particularly in light of Defendant's inadequate data security system and failure to encrypt the data.

74.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's Sensitive Information within Defendant's control.

75.     Defendant, through its actions and/or omissions, breached its duty to Plaintiff by failing to have procedures in place to detect and prevent access to Plaintiff's Sensitive Information by unauthorized persons.

76.     But for Defendant's breach of its duties, Plaintiff's   Sensitive Information would not have been compromised.

77.     Plaintiff's Sensitive Information was stolen and accessed  as the proximate result of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate security measures and encryption.

78.     As a result of Defendant's conduct, Plaintiff has suffered actual identity theft. Plaintiff suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent    on credit monitoring and identity theft

21

insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; missed wages; expenses and/or time spent initiating fraud alerts; and, the diminished value of the AvMed services he received.   Plaintiff suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses due to the identity theft and the exposure of his medical records to nefarious people.

**COUNT II**
**Breach Of Contract**

79.      Plaintiff repeats and re-alleges all previous allegations as if fully set forth herein.

80.      Plaintiff paid money to AvMed in exchange for health care coverage and its promises to protect their health information and Sensitive Information.

81.      In its written services contract, AvMed expressly promised Plaintiff that AvMed only discloses health information when required to do so by federal or state law. AvMed further promised that it would protect Plaintiff's Sensitive Information.

82.      AvMed promised to comply with all HIPAA standards and to make sure that Plaintiff's health information was protected. AvMed further promised to provide notice to Plaintiff describing AvMed's legal duties and privacy practices with respect to their health information.

83.      The contracts required Defendant not to disclose Plaintiff's health information and Sensitive Information to    unauthorized  third  parties,  and  to

22

safeguard the information from being lost and accessed. Upon information and belief, the Defendant is in possession of the original contract.

84.     Defendant did not safeguard Plaintiff's protected health information and Sensitive Information. Further, AvMed did not comply with its promise to abide by HIPAA.

85.     The failure to meet these promises and obligations constitute an express breach of contract.

86.     Because Defendant allowed unauthorized access to Plaintiff's Sensitive Information and failed to safeguard the Sensitive Information, Defendant breached its contract with Plaintiff.

87.     A meeting of the minds occurred, as Plaintiff agreed, *inter alia,* "to provide accurate and complete [Sensitive Information]" and to pay AvMed in exchange for AvMed's agreement to, among other things, protect his Sensitive Information. (Ex. B.)

88.     AvMed breached the contract by not meeting the minimum level of protection of Plaintiff's health information, because it did not prevent against the breach of 1.2 million members' Sensitive Information.

89.     Furthermore, the failure to meet its confidentiality and privacy obligations resulted in AvMed providing services to Plaintiff that were of a diminished value.

90.     As a result of Defendant's conduct, Plaintiff has suffered actual identity theft. Plaintiff suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports;

23

missed wages; expenses and/or time spent initiating fraud alerts; and, the diminished value of the AvMed services they received. Plaintiff has suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses due to the identity theft and the exposure of his medical records to nefarious people.

<u>COUNT III</u>
**Breach of Implied Contracts (in the alternative to Breach of Contract)**
**(On Behalf of Plaintiff)**

91.     Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

92.     Plaintiff hereby pleads this count in the alternative to his breach of contract claim.

93.     In order to benefit from Defendant's healthcare plan, Plaintiff disclosed Sensitive Information to AvMed, including his name, contact information (address, phone and fax numbers and email address), Social Security Number, date of birth, and extremely sensitive medical diagnosis information.

94.     By providing that Sensitive Information and upon Defendant's acceptance of such information, Plaintiff, on the one hand, and Defendant, on the other hand, entered into implied contracts whereby Defendant was obligated to take reasonable steps to secure and safeguard that information.

95.     Under the implied contract, Defendant was further obligated to provide Plaintiff with prompt and sufficient notice of any and all unauthorized access and/or theft of their Sensitive Information.

96.      Without such implied contracts, Plaintiff would not have provided his personal information to Defendant.

97.      Defendant breached its duty to Plaintiff by:

   a.      Failing to encrypt or otherwise protect the laptops containing Plaintiff's Sensitive Information;

   b.      Failing to timely notify and/or warn Plaintiff of the data breach;

   c.      Failing to ensure the confidentiality and integrity of electronic protected health information it created, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

   d.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

   e.      Failing to implement technical policies and procedures that govern the receipt and removal of hardware and electronic media that contain electronic protected health information into and out of a facility to maintain their security in violation of 45 CFR 164.310(d)(1);

   f.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

25

g.   Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR

164.308(a)(6)(ii);

h.   Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

i.   Failing to protect against an reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

j.   Failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 CFR 164.306(a)(94);

k.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502 et seq.;

l.   Failing to effectively train all members of its workforce (including independent contractors involved in the data breach) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of

26

protected health information in violation of 45CFR 164.530(b) and 45CFR 164.308(a)(5);

m.   Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR164.530(c); and

n.   Otherwise failing to safeguard Plaintiff's Sensitive Information.

98.   As a result of Defendant's conduct, Plaintiff has suffered actual identity theft. Plaintiff suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; missed wages; expenses and/or time spent initiating fraud alerts; and, the diminished value of the AvMed services he received. Plaintiff has suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses due to the identity theft and the exposure of his medical records to nefarious people.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff)**

99.   Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

100.    Plaintiff conferred a monetary benefit on AvMed in the form of monthly premiums.

101.    Defendant appreciated or had knowledge of such benefit.

102.    AvMed used the Plaintiff's premiums to pay for the administrative costs of data management and security.

103.    AvMed should not be permitted to retain the money belonging to Plaintiff because AvMed failed to implement the data management and security measures mandated by industry standards.

104.    Defendant either failed to implement or inadequately implemented policies to secure sensitive information, as demonstrated by the data breach.

105.    As a result of Defendant's conduct, Plaintiff has suffered actual identity theft. Plaintiff suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; missed wages; expenses and/or time spent initiating fraud alerts; and, the diminished value of the AvMed services they received.  Plaintiff has suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses due to the identity theft and the exposure of his medical records to nefarious people.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

      A.     Find that AvMed is liable under all legal claims asserted herein for its failure to safeguard Plaintiff's Sensitive Information;

      B.     Find that AvMed's actions, as described herein violate Fla. Stat. § 395.3025.

      C.     Award injunctive and other equitable relief as is necessary to protect the interests of the Plaintiff including: (i) an order prohibiting AvMed from engaging in the wrongful and unlawful acts described herein, and (ii) requiring AvMed to protect all data collected through the course of its business in accordance with HIPAA and industry standards;

      D.     Award damages, including statutory damages where applicable and punitive damages, to Plaintiff in an amount to be determined at trial;

      E.     Award restitution for any identity theft, including, but not limited to payment of any other costs, including attorneys' fees incurred by the victim in clearing the victim's credit history or credit rating, or any costs incurred in connection with any civil or administrative proceeding to satisfy any debt, lien, or other obligation of the victim arising as the result of Defendant's actions;

      G.     Award restitution in an amount to be determined by an accounting of the difference between the price Plaintiffs paid in reliance upon Defendant's duty/promise to secure its members' Sensitive Information, and the

actual services— devoid of proper protection mechanisms—rendered by

Defendant;

       H.      Award Plaintiff his reasonable litigation expenses and attorneys'

fees;

       I.      Award Plaintiff's pre and post-judgment interest to the

maximum extent allowable by law; and

       J.      Award such other and further legal or equitable relief as equity

and justice may require.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: May 26, 2014

                        Respectfully Submitted,

                        Joseph Perea
                        PO Box 961383
                        Miami, FL 33296
                        T. 305-934-6215
                        F. 888-229-4968
                        perealaw@gmail.com provided pursuant to
                        Fla. R. Jud Admin. 2.516

                        */s/ Joseph Perea*
                        Joseph Perea, FBN: 47782
                        Attorney & Pro Se Plaintiff